# UNITED STATES DISTRICT COURT
for the
District of Maryland

FILED ___ ENTERED
___ LODGED ___ RECEIVED

JUL 0 8 2013

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Sandro DaCosta | ) | Case No. |
| ~~and~~ TJS | ) | |
| ~~Christiane Figueiredo~~ | ) | **13-1621TJS** |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of _July 27, 2012_ in the county of _Baltimore City_ in the
_____ District of _Maryland_, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1542; | Fraud in application for a U.S. Passport; |
| 42 U.S.C. § 408(a)(7)(B) | Misuse of a Social Security account number |

This criminal complaint is based on these facts:

See attached Affidavit.

X Continued on the attached sheet.

_____
*Complainant's signature*

Conor Washington, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _July 8, 2013_

_____
*Judge's signature*

City and state: Baltimore, MD

Timothy J. Sullivan, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SANDRO DACOSTA, | ) | Crim. No. **13-1621TJS** |
| CHRISTIANE FIGUEIREDO, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT,
ARREST WARRANT, AND SEARCH WARRANT**

I, Conor Washington, being duly sworn, state:

1. I am a Special Agent employed by the Social Security Administration, Office of the Inspector General, Office of Investigations (SSA/OIG/OI). I am assigned to the Washington, D.C. Field Office. My duties include, but are not limited to, investigating fraud waste and abuse against the Social Security Administration and its programs.

<u>Introduction and Experience</u>

2. The facts and information contained in this affidavit are based upon my training and experience, participation in investigations, personal knowledge, and observations during the course of this investigation, as well as the observations of other agents involved in this investigation. All observations not personally made by me were relayed to me by the individuals who made them or are based on my review of records, documents, and other physical evidence obtained during the course of this investigation. This affidavit contains information necessary to support probable cause. It is not intended to include each and every fact and matter observed by me or known to the United States.

1

3.  Based on your affiant's training, knowledge, experience, and participation in other investigations involving Social Security Number (SSN) fraud, passport fraud, identity theft, and other fraudulent activities, as well as discussions with other law enforcement officers, your affiant knows that those involved in identity theft maintain records, receipts, notes, ledgers, money orders, bills, identity documents, correspondence, and other papers relating to identity theft. Your affiant knows that such records, receipts, notes, identity documents, etc., are maintained within their residences and their vehicles, where they have ready access to them.

4.  Your affiant knows that those involved in identity theft schemes and/or other similar fraudulent activities maintain the records of fraudulent transactions as conventional business records, and as such, these records are maintained over an extended period of time, including time periods long after any particular transaction is completed.

5.  Your affiant knows that those involved in identity theft commonly maintain addresses or telephone numbers in books or papers that reflect their true identity, other identities they have assumed in the past, as well as the names, addresses and/or telephone numbers of associates who have participated in their fraudulent activities.

6.  Your affiant knows that those involved in identity theft commonly maintain at their residence electronic documents and correspondence, including e-mails, instant messages, and text messages, on desktop computers, laptop computers, tablet computers, cellular phones, and other electronic devices, which electronic media reflect their true identity, other identities they have assumed in the past, as well as the names, addresses and/or telephone numbers of associates who have participated in their fraudulent activities.

## Factual Background

Case 1:13-mj-01621-TJS Document 1 Filed 07/08/13 Page 4 of 18

7. This affidavit is submitted in support of a warrant to search 11500 Apperson Way, Germantown, Maryland (SUBJECT PREMISES). The SUBJECT PREMISES is more particularly described in Attachment A. The items to be seized are described in Attachment B.

8. As provided below, there is probable cause to believe that within the SUBJECT PREMISES, there exists evidence, fruits, and instrumentalities of the crimes of fraud in an application for a U.S. passport, in violation of 18 U.S.C. § 1542, and misuse of a Social Security account number, in violation of 42 U.S.C. § 408(a)(7)(B).

9. I further submit this affidavit in support of a criminal complaint charging Sandro DACOSTA (DACOSTA) and Christiane FIGUEIREDO (FIGUEIREDO) with fraud in an application for a U.S. passport, in violation of 18 U.S.C. § 1542; and charging DACOSTA with misuse of a Social Security account number (SSN), in violation of 42 U.S.C. § 408(a)(7)(B). I also respectfully request that arrest warrants be issued for DACOSTA and FIGUEIREDO.

10. During mid-January 2013, Special Agent (SA) Christopher Bahleda (Bahleda) of Diplomatic Security Service (DSS) contacted me. SA Bahleda advised an individual named Alexsander Andrews, also known as Sander Andrews (Andrews), applied to become a Baltimore City Police Officer (BCPO) on July 27, 2012; however, his fingerprints matched DACOSTA, who was arrested in 1997 in Massachusetts. Your affiant believes, based on facts learned during the course of this investigation, that Andrews and DACOSTA are the same individual.

11. As part of his BCPO application Andrews listed his name as "Alexsander Andrews," his date of birth (DOB) as 2/18/1983, and stated he also went by the first names "Alex" and "Sander." Andrews provided a SSN of XXX-XX-9974 on the application.

12. As proof of citizenship, Andrews provided U.S. Passport card C04279648 issued on April 18, 2011. A search of the Department of State Consular Consolidated Database (CCD)

revealed that this card was issued to Alexsander Andrews, DOB 2/18/83, after he filed a DS-82 passport renewal form. The DS-82 passport renewal form, which contains Andrews's signature, was submitted by mail, and lists a home address for Andrews of 11449 Stoney Point Place, Germantown, MD. Your affiant has also reviewed a DS-82 passport renewal form signed and dated by Andrews on October 1, 2009, and which was also submitted by mail. That application for renewal, which resulted in a passport being issued to Andrews, listed a home address of 1504 December Drive, Silver Spring, MD. The first passport that Andrews applied for was issued on February 12, 2003 at the U.S. Consulate in Rio de Janeiro. This was issued to Sander Andrews after he was granted a Consular Report of Birth Abroad (CRBA).

13. Andrews applied and was approved for a CRBA based on the following documents he presented to a consular officer: an Affidavit of Parentage and Physical Presence, a CRBA application, a Brazilian marriage certificate for Maria Salete Ramos and Gregory Andrews, a Virginia birth certificate for Gregory Andrews, a Brazilian birth certificate for Sander Andrews, and a Virginia marriage certificate for Delia Marie Caldwell and Gregory Andrews.

14. The Affidavit of Parentage and Physical Presence and CRBA application both contained false information. The forms indicated that Gregory Andrews, who Andrews claimed in the application for a CRBA to be his father, lived in Rio De Janeiro from June 1982 until August 1983.

15. Your affiant and SA Bahleda conducted interviews with Gregory Andrews on March 20 and April 4, 2013 at the Loudoun County Adult Detention Center, located in Leesburg, VA. During those interviews Gregory Andrews stated that he met Andrews under the name "Sanders Colombo" while they both worked for Fairfax Paving and Excavating in Chantilly, VA.

4

Gregory Andrews stated that soon after he started at Fairfax Paving and Excavating, Andrews approached him and told him that he might be Andrews's father. Gregory Andrews admitted that he may have signed documents related to Andrew's application for a CRBA, and that he may have signed documents related to a DNA test that purported to show he was Andrews's father. Gregory Andrews also admitted that during the period when he signed these documents, Andrews made three payments of approximately $1500 each toward past-due child support owed by Gregory Andrews. Gregory Andrews did not claim during these interviews to being Andrews's biological father. Gregory Andrews stated he has never left the United States. Gregory Andrews stated that he does not know and was never married to Maria Salete Ramos. A search of passport records shows that Gregory Andrews has never obtained a U.S. passport.

16. A search of Brazilian records by Brazilian officials in response to a request from DSS shows that there is no record of Sander Andrews's birth in Brazil. Nor do any Brazilian records memorialize a marriage between Maria Salete Ramos and Gregory Andrews

17. A copy of the fingerprints that Andrews provided the Baltimore Police Department was sent to the Assistant Regional Security Officer – Investigations at the U.S. Embassy in Brasilia, Brazil for comparison with Brazilian fingerprint records. The fingerprints were matched by a Criminal Forensics unit with the Identification Institute for the State of Catarina to fingerprints taken in conjunction with the issuance of national identification cards to DACOSTA. The national identification fingerprints were taken in 1990 and 1987. The fingerprints also matched a 2005 national identification card issued to Sander Andrews. This national identification document states that the parents of Sander Andrews are Gregory Andrews and Maria Salette Ramos Da Costa.

18. The authentic Brazilian birth certificate for DACOSTA, which was obtained from Brazilian officials during the course of this investigation shows that his parents are Maria Salette Ramos Da Costa and Valdir Da Costa.

19. I obtained a copy of Andrews's application to become a BCPO and observed SSN XXX-XX-9974 listed on the application. A review of the SSA database revealed SSN XXX-XX-9974 assigned to Andrews on or around April 19, 2011. I also obtained a copy of a Retrieved Enumeration Detail Printout/Application for SSN Card and Application (SS-5) associated with SSN XXX-XX-9974. According to the SS-5, Andrews indicated this was his first time applying for an SSN. Andrews provided Virginia driver's license C62416591 as proof of identity. A copy of Virginia driver's license C62416591 was present in the copy of Andrews BCPO application I obtained.

20. On or around January 28, 2013, I queried the name Sander Andrews with date of birth of February 18, 1983, in the SSA database. A review of the results revealed two SSN's, XXX-XX-9658 and XXX-XX-8529, assigned to different individuals named Sander Andrews with a date of birth of February 18, 1983. According to the SSA database, SSN XXX-XX-9658 was assigned to Andrews on February 26, 2003, and SSN XXX-XX-8529 was assigned to Andrews on October 21, 2009.

21. I requested and reviewed copies of the SS-5's associated with the SSN's XXX-XX-9658 and XXX-XX-8529. A review of the SS-5's for SSN XXX-XX-9658, revealed United States passport 017702822 listed as proof of citizenship and identity on an SS-5 dated August 15, 2005. I obtained copies of applications for United States passports associated with SSN XXX-XX-9658, which included photographs of the applicant.

22. A review of an SS-5 for SSN XXX-XX-8529 reflects Andrews indicated he had never been issued a prior SSN. The SS-5 listed Certificate of Citizenship A#087463913 was provided as proof of identity/citizenship. I obtained a copy of the Certificate of Citizenship, which included a photograph. The photograph on file for U.S. passport 017702822, the photograph on the Certificate of Citizenship A#087463913 and the photograph on Virginia driver's license C62416591 were of the same person.

23. After reviewing copies of the photographs associated with the evidence of identity and citizenship provided to the SSA, I determined DACOSTA applied for and obtained three separate SSN's by providing false information to the SSA.

24. I obtained and reviewed a final decree of divorce entered November 19, 2002 in the Fairfax County Circuit Court, and memorializing the divorce of Christiane Figueiredo Dos Santos and Sandro Renato Da Costa. The decree states that the parties were lawfully married on or about September 22, 1995, in Somerville, MA, and have one daughter, named Julie Anie Da Costa, born February 19, 1997. The decree further states that Christiane Figueiredo Dos Santos is the complainant, and that she has been unable to locate Da Costa, whose last known address is in Lowell, MA. The decree further states that the parties last separated on or about March 3, 1999 and the separation has continued without any interruption since that time. I know that Julie Anie Da Costa, also known as Julie Anie Andrews, is the daughter of DACOSTA and FIGUEIREDO from my review of, among other documents, a DS-11 U.S. passport application for Julie Anie Andrews made on or about November 4, 2004, which lists her parents as Sander Andrews, DOB 2/18/83, and Christiane Andrews, DOB 8/22/75.

25. I obtained and reviewed a marriage certificate for Andrews and Christiane Dos Santos, DOB 8/22/75, place of birth Brazil, which marriage certificate was registered in the Fairfax County Circuit Court on April 22, 2003.

26. I obtained and reviewed a DS-11 U.S. passport application for Christiane Andrews, who I know to be FIGUEIREDO, signed by FIGUEIREDO, and listing a DOB of 8/22/75 and a home address of 11449 Stoney Point Place, Germantown, MD. The parents of FIGUEIREDO listed on this form DS-11 are the same as those listed on the marriage certificate dated April 22, 2003. On the form DS-11 FIGUEIREDO lists her husband as Alexsander Andrews, DOB 2/18/83. On the same form, and in response to the question, "Have you ever been widowed or divorced?," FIGUEIREDO checked the box marked "No."

27. On May 28, 2013, SA Bahelda and I conducted surveillance of the SUBJECT PREMISES. On this date, I observed DACOSTA depart and enter the SUBJECT PREMISES. Additionally, I observed two vehicles parked near the SUBJECT PREMISES bearing Virginia license plates registered to Andrews.

28. On May 22, 2013, SA Bahleda received information from the Virginia Department of Motor Vehicles that Andrews has a 2011 Toyota Rav 4 bearing Virginia license plate "USMC M" and a 1994 Toyota Corolla bearing Virginia license plate "USMC G" registered in his name. On that same date, SA Bahleda obtained information from the National Vehicle Location Service indicating that both tags were registered to have been in the area of the SUBJECT PREMISES.

29. During the month of June 2013, SA Bahleda reviewed information obtained from a pole camera previously installed at the entrance/exit to the housing association within which the SUBJECT PREMISES is located. That entrance/exit is the only way to access the SUBJECT

PREMISES, which is located on a cul-de-sac. Review of images recorded by the pole camera indicates that the 2011 Toyota Rav 4 and 1994 Toyota Corolla can be observed entering and exiting the cul-de-sac on several occasions on different dates.

30. On June 18, 2013, SA Bahleda received information that DACOSTA had been interviewed by the Prince William County Police Department in conjunction with his application for employment by them, and stated during the interview that he lived part of the week in Germantown, MD with his wife, and part of the week at the Woodbridge, VA address he listed on his application with Prince William County.

31. Your affiant believes that the Woodbridge, VA address is a sham address and that DACOSTA and FIGUEIREDO reside full-time at the SUBJECT PREMISES. On May 20, 2013, SA Bahleda drove by 4503 Glendale Road, Woodbridge, VA (which address is listed on the BCPO and Prince William County Police Department applications), and ran the registrations of two vehicles parked in front of that address. Both vehicles were registered to Rubens Osvaldo De Faria and Priscila Lopes De Faria. One of the two vehicles, a white 2007 Dodge Charger, had a listed address of 4503 Glendale Road, Woodbridge, VA.

## Conclusion

32. Based upon the above information, I respectfully submit there is probable cause to search the SUBJECT PREMISES, more particularly described in Attachment A, for the items to be seized, as described in Attachment B. I further submit there is probable cause to issue a criminal complaint charging Sandro DACOSTA and Christiane FIGUEIREDO with fraud in an application for a U.S. passport, in violation of 18 U.S.C. § 1542; and charging DACOSTA with misuse of a Social Security account number, in violation of 42 U.S.C. § 408(a)(7)(B), and to issue an arrest warrant for the same.

_____
Special Agent Conor Washington
SSA/OIG/OI, Washington, D.C. Office

Sworn to and subscribed to before me
this __8th__ day of July, 2013

_____
Hon. Timothy J. Sullivan
United States Magistrate Judge
Baltimore, Maryland

## ATTACHMENT A

Property To Be Searched

11500 Apperson Way, Germantown, Maryland is an attached "row home" style residence. The home has two visible stories and a black shingled roof. The exterior has white siding and the first story has a "bump out" window trimmed in grey. The second story is also white siding with two windows with grey shutters. The home has the numbers "11500" in black lettering on a grey background at the top of the left hand rail on the front steps. The front door is red, with a grey-colored trim.

## ATTACHMENT B

Particular Things To Be Seized

Any and all evidence, fruits, and instrumentalities of Passport Fraud, Title 18 United States Code Section 1542 and Social Security Number Fraud, Title 42 United States Code Section 408(a)(7)(B), to include the following:

1. Any and all written correspondence, notes, lists, records, documents, or information that may pertain to the SSN's XXX-XX-9974, XXX-XX-9658, XXX-XX-8529 as well as any other names or SSN's that appear to be fraudulent.

2. Written correspondence, photographs, audio or video recordings, notes, lists, records, identification documents, passports, invoices, receipts, mail or other documents that indicate the true identity or country of origin of DACOSTA.

3. U.S. Mail directed to names other than DACOSTA, or other parties not residing at 11500 Apperson Way, Germantown, Maryland.

4. Books, records, receipts, bank statements, and bank records, ATM/Debit cards, money drafts, letters of credit, wire transfers, money orders, and cashier check, passbooks, bank checks, and any other items evidencing the obtaining, secreting, transfer, concealment and/or expenditure of money.

5. Social Security Administration documents, including Numidents, Alfadents, Social Security Number cards and/or applications for Social Security Number cards, papers with social security numbers, credit reports, credit profiles, photographs, fraudulent identification and identification making equipment.

6. Passports, travel documents, drivers licenses, identity cards and/or applications for the same.

7. Records reflecting indicia of occupancy, residency and/or ownership of the premises, including but not limited to utility and telephone bills, mortgage, deed, lien records, U.S. Mail, including Express Mail, and other types of courier services.

8. Evidence of appliances, devices, furniture, equipment, property, items generally, and services that represent purchases using credit cards obtained by fraud and/or proceeds of other forms of fraud or financial crimes and items that related to or constitute evidence, fruits, or instrumentalities of violations of 42 USC §408.

9. Credit cards, credit card account numbers, payment records and/or account numbers of any kind including electronic terminal receipts for credit cards, credit card and credit account statements and receipts.

10. Electronic equipment, such as telex machines, facsimile machines, cellular telephones, telephone answering machines and related manuals used to generate, transfer, record, and/or store computer-read or generated information, which can be used to store evidence of, or facilitate the commission of, identity theft and/or Social Security Number misuse. Additionally computer software, tapes, disks, audio tapes, and the contents therein, containing the information generated by the aforementioned electronic equipment.

11. Electronic devices and information and data which is stored on electronic devices capable of analyzing, creating, displaying, converting, receiving, or transmitting electronic and/or magnetic computer impulses or data, which can be used to store evidence of, or facilitate the commission of, identity theft and/or fraud-related offenses. These devices include, but are not limited to, computers, computer components, computer peripherals, word processing equipment, modems, monitors, printers, plotters, optical scanners, encryption circuit boards, hard

drives, and other computer related electronic devices. Other such items which include instructions or programs which allow users the ability to operate such systems.

12. Computer(s), computer hardware, software, related documentation, passwords, data security devices (as described below), videotapes, video recording devices, video recording players, monitors, and or televisions, flatbed scanners, and data where instrumentalities of and will contain evidence related to this crime. The following definitions apply to the terms as set out in this affidavit and attachment:

a. Computer hardware: Computer hardware consists of all equipment, which can receive, capture, collect analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or date. Hardware includes any date-processing devices (including but not limited to central processing units; internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including but not limited to keyboards, printer, video display monitors, and related communications devices such as cables and connections), as well as any devices mechanisms, or parts that can be used to restrict access to computer hardware (including but not limited to physical keys and locks).

b. Computer Software: Computer software is digital information, which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

c. Documentation: Computer-related documentation consists of written, recorded, printed, or electronically stored material, which explains or illustrates how to configure or use computer hardware, software, or other related items.

d. Passwords and Data Security Devices: Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation or data. Data security devices may consist of hardware, software or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touches. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected date to make it inaccessible or unusable, as well as reverse the progress to restore it.

13. The computers may be searched for the following items:

a. Any and all notes, documents, records, or correspondence pertaining to fraud or identity theft.

b. Any and all correspondence identifying persons transmitting, receiving or possessing, through interstate commerce including by U.S. Mails or by computer, any personal data identifiers.

c. Any and all records, documents, invoices and materials that concern any accounts with any Internet Service Providers and financial or lending institutions.

d. Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission,

through interstate commerce including by United States Mails or by computer, any personal data identifiers, identification documents, and/or bank and credit card accounts.

e.  Any and all documents, records, or correspondence pertaining to occupancy at 11500 Apperson Way, Germantown, Maryland

14. Any of the items described in paragraphs 1 through 12 above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment, including floppy diskettes, fixed hard disks, or removable hard disk cartridges, software or memory in any form. The search procedure of the electronic data contained in computer operating software or memory devices shall include the following techniques which shall be used to minimize the risk that those conducting the search will view information not within the scope of the warrant:

a.  surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

b.  "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

c.  "scanning" storage areas to discover and possible recover recently deleted files;

d.  "scanning" storage areas for deliberately hidden files; or

e.  performing key word or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

15. If after performing these procedures, the directories, files or storage areas do not reveal evidence of identity theft or social security number misuse or constitute evidence, fruits,

or instrumentalities of violations of 18 USC § 1542 and 42 USC § 408(a)(7)(B), the further search of that particular directory, file or storage area, shall cease.